[PHILADELPHIA, APRIL 3D, 1841.]

## BRIDGE OVER SMITHFIELD CREEK.

### CERTIORARI.

1. There is nothing in the acts of assembly relating to bridges to prevent the county commissioners from building new bridges over any stream; provided that such bridges are approved of in the manner declared in the 35th section of the act of 13th June, 1836.

2. Where, therefore, the superstructure of a county bridge had been swept away by a freshet, it was held that the county commissioners (though perhaps bound to repair it) might erect a new bridge over the same stream at another place ; and that an order of the Quarter Sessions for the appointment of viewers for such purpose was regular and proper, though there was no application to vacate the former bridge.

3. Under the act of 13th June, 1836, a report of viewers upon the subject of a bridge must be made to the *next* term. When a report therefore was made on the 3d of February, 1841, upon an order made on the day preceding, the proceedings were quashed.

4. Under the act of 13th June, 1836, the Court of Quarter Sessions may authorise the erection of a bridge over any river or stream, though a public highway.

CERTIORARI to the Quarter Sessions of Monroe County, to remove the proceedings in the matter of the petitions for building bridges over Smithfield creek, at the places where the road from Easton to

Milford, and the road from the Easton and Milford road to Strouds-burg cross the said creek, in Smithfield township, in the county of Monroe.

The facts were as follows.

A bridge was erected over Smithfield creek, where the public road leading from Easton to Milford crosses the same, by the commissioners of Northampton county, in pursuance of the order and decree of the Court of Quarter Sessions of that county, made at April sessions 1795; and was kept in repair by that county, up to the time of the erection of Monroe county, (in the year 1836), and by Monroe county up to the 8th of January, 1841.

By the 7th section of the act of 15th March, 1826, (Pamphlet Laws, page 118,) James Bell and Evan Thomas were authorised to erect a bridge over Smithfield creek, near their mill, where the road leading from Stroudsburg to Houser's, crosses the same, (called in in this certiorari the road from the Easton and Milford road to Stroudsburg,) "provided that the said bridge shall so be built as not to injure or obstruct the navigation of the said creek; and when completed shall be free from toll, and kept in good repair forever, by the said township of Smithfield;" and the said Bell and Thomas were authorised to take and receive such subscriptions as they might be able to procure, and collect such sums of money as were already subscribed, and apply the same to the building of the bridge.

By the act of 14th April, 1827, (Pamphlet Laws, 331,) so much of the act of 15th March, 1826, "authorising James Bell and Evan Thomas, to build a bridge over Smithfield creek, in Northampton county, as compels the township of Smithfield ever after to keep the said bridge in repair," was repealed. And it was provided that "the said James Bell and Evan Thomas, be and they are hereby authorised to receive a rate of toll which shall enable them after paying all repairs and other necessary expenses, to divide six per centum per annum, on the capital sum expended." The act also required them to report the cost, &c. within two years, and annually, if required, the tolls, &c. received, to the Court of Quarter Sessions of Northampton county.

In pursuance of these laws, the said Bell and Thomas, in the years 1827 and 1828, erected the bridge so authorised; which was repaired from time to time, until the 8th of January, 1841.

On the 8th of January, 1841, there occurred a very great freshet, which swept away the superstructure of the county bridge, at the Easton and Milford road, and somewhat injured the southern abutment. The same freshet also carried away the bridge of Messrs. Bell and Thomas.

(Bridge over Smithfield creek.)

At February sessions, 1841, the Court of Quarter Sessions of Monroe county, expressed an opinion that a view was necessary, and that the concurrence of the court, grand jury and commissioners, was required for repairing the county bridges which had been swept away by the freshet. On the 2d day of February, 1841, the following petitions were presented to the court:

" To the honourable the judges of the Court of Common Pleas of the county of Monroe, now composing a Court of Quarter Sessions of the Peace, in and for said county.

The petition of the subscribers, inhabitants of the township of Lower Smithfield, in said county, respectfully represents, That the recent flood has taken away the two bridges across Smithfield creek, where the public mail road from Easton to Stroudsburg crosses it, and the other where the public road from Easton to Milford crosses the same. That the bridges are very necessary, and that the expense thereof would be too heavy and burthensome upon the inhabitants of said township.

Your petitioners represent also, that if *one bridge* was properly located about equi-distant between the former two sites, and a road laid out to be connected therewith, it would equally accommodate the public, and save the expense of two bridges. Your petitioners therefore pray your honours to appoint proper persons to view and select a proper site for a bridge, agreeably to the act of assembly in such case made and provided, and they will pray," &c. &c.

This petition was signed by Peter Korts, and nine others.

The other petition is as follows:

" To the honourable the judges of the Court of Common Pleas of the county of Monroe, now holding a Court of Quarter Sessions of the Peace, in and for said county.

The petition of the subscribers, inhabitants of the township of Lower Smithfield, and parts adjacent in said county, respectfully represents, That a bridge is much wanted over Smithfield, otherwise called Brodhead's creek, at the place where the great public highway leading from Easton to Milford, crosses the said creek, in Lower Smithfield township, in said county; and that the erection of such bridge will require more expense than it is reasonable the said township should bear. Your petitioners therefore pray the court to appoint proper persons to view the premises, and to take such order on the subject as is required and directed by the act of assembly, in such case made and provided. And they will pray," &c. &c.

This petition was signed by George Walter, and fifty-one others.

On the same day, viz. the 2d of February, 1841, the following order was made.

(Bridge over Smithfield creek.)

" At a court of Quarter Sessions of the peace, of the county of Monroe, held at Stroudsburg, in and for the said county, on the 2d day of February, A. D. 1841, before the judges of the same court. Upon the petition of sundry of the inhabitants of the township of Smithfield, in the said county, setting forth that a bridge is much wanted over Brodhead's creek, at the place where the public highway crosses the said creek, in the township of Smithfield, in said county; and that the erection of such bridge will require more expense than it is reasonable the said township should bear, and praying the court to appoint proper persons to view the premises, and to take such order on the subject as is required and directed by the act of assembly, in such case made and provided. Whereupon, the court, on due consideration had of the premises, do order and appoint James H. Stroud, Franklin Starbird, Thomas J. Albright, Leonard Bartron, Abraham Youngkin and James Ely, who, after being duly sworn or affirmed to perform the duties of their appointment with impartiality and fidelity, are to view the place proposed for said bridge, and if any five of them view the same, and any four of the actual viewers agree that there is occasion for such bridge, and that the erecting of the said bridge would require more expense than it would be reasonable the said township should bear, make report accordingly; and the said viewers are further authorised to examine the route of the road crossing the creek over which the said bridge is prayed for; and if in their opinion a change or variation in the bed of the road would be an improvement, and saving of expense in the erection of such bridge, they are to make report thereof, and cause such variation as aforesaid, to be accurately surveyed, and a map or plot thereof to be made, which shall accompany said report; the report aforesaid, to be made to the court now sitting, of Quarter Sessions, to be held for the said county of Monroe, in which report they shall state that they have been sworn or affirmed according to law."

On the 3d of February, 1841, the following report was filed:

" To the honourable the judges within named, we the persons appointed by the court to view the place for the proposed bridge, in the within order mentioned, do report, That in pursuance of the within order, after being severally sworn or affirmed, as within directed, we have viewed the place where the public highway crosses Brodhead's creek, in the township of Smithfield, and parts adjacent, and are of opinion that a bridge over the said creek in the said township is indispensably necessary, and that the expense of erecting such bridge would be more than it would be reasonable the said township of Smithfield should bear. That we have selected a site for said bridge, immediately at the upper end of James Bell's saw-mill, on said creek. We further report, that we have viewed, laid out, and do return for public use, the following road, to be con-

(Bridge over Smithfield creek.)

nected with said bridge, to wit :—Beginning at the public road on the north-east side of Brodhead's creek, near the site of the old Smithfield bridge; thence north forty-two and a half degrees, west twenty-five perches through lands belonging to Zimmerman; thence north fifty-nine degrees, west fourteen perches to a white oak; thence north seventy-one and a quarter degrees, west twenty-two perches to a red oak, partly through Zimmerman's and James Bell's land; thence north seventy-seven degrees, west eleven perches to a large white oak; thence north seventy-nine degrees, west twelve perches to a maple; thence south eleven degrees, west thirteen perches across Brodhead's creek, to the public road near the house of James Bell; then beginning at the said maple, thence north eighty and a half degrees west ten perches; thence south seventy-nine and a half degrees west twenty-two perches to a hickory; thence through land of Joseph Houser, south sixty and a half degrees west twenty-four perches; thence west twenty-two perches to a white oak, in the public road leading to Stroudsburg—a plot or draft of which is hereunto annexed. We would also state that the recent freshet took away two bridges on said creek, the one where the highway from Easton to Milford crosses said creek, the other where the mail road from Easton to Stroudsburg crosses the same; and that the site we herewith return as the most suitable place for the erection of a bridge, is about equi-distant between the former two sites; and with the road we also herewith return as connected therewith, will equally accommodate the public, and answer every purpose of two bridges as before."

This report was signed by the six viewers named in the order.

This report was presented to the court, and approved on the same day, viz. on the 3d of February, 1841.

It was then sent up to the grand jury, and approved by them.

This certiorari was taken on the 6th of February, 1841.

The following errors were assigned:

" 1. That the bridge over Smithfield creek, on the road from Easton to Milford, being a county bridge, and so entered of record at April Sessions, 1795, the commissioners were bound to repair it without any further proceedings by view, &c. And any view or proceedings thereon, were unauthorised by law.

2. That but one order issued; whereas there are two distinct petitions for bridges at different places.

3. That the order is made returnable at February sessions, 1841; whereas it should have been made returnable to the next sessions thereafter.

4. That the viewers have exceeded their authority in laying out a

road from the Easton and Milford road, to the road leading from the Easton and Milford road to Stroudsburg, on the north side of Brodhead's or Smithfield creek.

5. That the court had no right to appoint a view to report to the same sessions, and to receive their report and act thereon within two days from the presentation of the original petitions; the same being unauthorised by law, and affording no time to those interested to make objection thereto.

6. That there was not time from the issuing of the order to the return of the same, to give reasonable notice of the meeting of the viewers, and of the intention to bring the proceedings before the court and grand jury.

7. That Smithfield or Brodhead's creek being a public highway, the court could not authorise the erection, nor could the commissioners erect a bridge over the same, without a special law for the purpose.

8. That the decree of the court approving the report, is contrary to law."

Mr. *Ihrie* and Mr. *Porter,* argued for the appellants.

Mr. *Mallery,* contra.

The opinion of the court was delivered by

SERGEANT, J.—

1. The first of these exceptions seems inapplicable to the facts of the case. The bridge in question is a new one, to be built at neither of the former sites, but about equidistant from each. The county commissioners might, perhaps, be bound to repair the former county bridge, (though as to that we give no opinion,) and yet they might also, under the provisions of the act of assembly, with the approbation of the court and grand jury, build as many new bridges over the creek as should be found expedient. There is nothing in the act of assembly that restrains the building of new bridges, either as to place or number, provided they are approved of in the manner pointed out in the 35th section of the act of 13th June, 1836. As to vacating the former county bridge, I see nothing in the petition or proceedings that has an eye to that. The old county bridge, or what is left of it, remains in *statu quo* unaffected by these proceedings.

2. The second objection has been satisfactorily answered by the counsel for the petitioners. The order and proceedings of the viewers seem to be merely on the first petition, (which is placed last in the paper book,) the one headed by George Walter. The presence of another petition in the record, not acted on, must be con-

(Bridge over Smithfield creek.)

sidered as irrelevant and not affecting the validity of the proceedings, if otherwise right.

3. The third objection is however fatal. The act of 13th June, 1836, section 35, directs that the court shall " order a view in the manner provided for in the case of roads." And the 3d section enacts in the case of roads, that the viewers " shall make report at the next term of the said court." It is impossible we think, to give any other interpretation to the 35th section than that the viewers of bridges also shall make their report at the next term of the court. It cannot be, as has been contended, that the *manner* here referred to, embraces merely the mode of appointing the viewers, and has no reference to their duties. Under such a construction there would be no rule at all in the case of bridges, as to the duties of the viewers, the time of making their report, and other matters of great importance, and concerning which it would be inconvenient to leave them *ad libitum* without any direction or control. The legislature seem to have deemed it expedient that there should be a delay in the report till the succeeding term, as well that the viewers might have time to weigh and deliberate without hurry or precipitation, as that parties interested should have opportunity to learn the doings of the jury, and act with preparation in regard to them. These reasons apply as strongly to bridges to be erected, as to roads to be laid out; indeed frequently they are connected together. See sec. 37. It is true, it may happen that on extraordinary occasions a freshet may sweep away bridges, and make immediate action desirable. This is a case however for which the act does not provide.

The 4th, 5th, and 6th, have been passed over, and are indeed included in the former.

7. This we think forms no objection. The legislature had competent power to authorise the erection of bridges over streams declared public highways, either by a special act or a general one ; and the act of 13th June, 1836, gives authority as to all rivers, creeks and rivulets, without exception.

But on the 3d objection, these proceedings must be reversed.

Proceedings reversed.